FILED
FEB 03 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN C. NORRIS,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

CV-09-6045-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

    Plaintiff Steven Norris brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income (SSI) payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's decision is affirmed.

1 - OPINION AND ORDER

## BACKGROUND

Norris was fifty years old at the time of the administrative hearing. Admin. R. 330.[1] He earned a graduation equivalency diploma (GED) and has worked as a landscaper, general laborer, service station attendant, cashier, mechanic, janitor, night watchman, and machine operator. *Id.* at 69-76, 330-335, 365. Norris alleges disability due to right knee injury, back pain, chronic obstructive pulmonary disease (COPD), and obesity. He filed for disability on December 1, 2006, alleging onset of disability from October 3, 2006. His application was denied initially and on reconsideration. A hearing was held before and Administrative Law Judge (ALJ) on May 22, 2008. The ALJ found Norris satisfied the insured status requirements for a claim under Title II through December 31, 2006. Norris must establish that he was disabled on or before that date to prevail on his DIB claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The ALJ issued an opinion on August 12, 2008, finding Norris not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

---

[1] Citations to "Admin. R." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At step one, the Commissioner determines whether the claimant has engaged in any substantial gainful activity (SGA) since the alleged onset of disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has engaged in SGA, he is not disabled. *Id.* The Commissioner determines at step two whether the claimant has a severe impairment. An impairment is severe if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § §404.1521, 416.921. The burden to show a medically determinable severe impairment is on the claimant. *Bowen v. Yuckert*, 482 U.S. at 146.

At step three, there is a conclusive presumption that the claimant is disabled if the Commissioner determines that the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.* at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). The criteria for these listed impairments are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1. (Listing of Impairments).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p. At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past. If the ALJ determines that he retains the ability to perform his past work, the Commissioner will find the claimant not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant cannot perform his past relevant work, the analysis proceeds to step five. At

step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Bowen v. Yuckert*, 482 U.S. at 142; 20 C.F.R. §§ 404.1520(e), (g), 416.920(e)(g). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. *Id.*, 20 C.F.R. §§ 404.1566, 416.966.

## ALJ'S FINDINGS

The ALJ applied the five step disability determination analysis and found at step one that Norris had not engaged in any SGA since October 3, 2006. Admin. R. 19. At step two, he determined that Norris has the medically severe impairments of status post multi-ligament tear and repair of the right knee; COPD/asthma with a smoking habit; obesity; and an episode of pancreatitis related to alcohol abuse. *Id.* The ALJ found at step three that Norris did not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app.1. *Id.* at 20. The ALJ found Norris had the following RFC: light work with no kneeling and crouching; "no more than occasional and if possible avoid crawling; avoid uneven terrain; sit and stand option; and avoid exposure to concentration of respiratory irritants." *Id.* at 21. At step four, the ALJ found Norris could perform his past relevant work as a cashier. *Id.* at 24. Although not required to do so, the ALJ applied step five and found Norris can perform other work in the national economy and therefore is not disabled. *Id.* at 25.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for "determining credibility, resolving conflicts in the medical testimony and resolving ambiguities." *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001)(citations omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir. 1986). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d at 1193.

## DISCUSSION

Norris seeks a sentence six remand in order for the ALJ to review a form completed by Naomi Holland, Norris' mother. He submitted this form to the Appeals Council and it is part of the record. Although the ALJ found at step two that Norris has medically severe impairments, Norris alleges the ALJ improperly determined his back pain was not severe and did not adequately assess the combination of his impairments. Norris further alleges the ALJ erred at step three by failing to find his impairments met or equaled the Listing criteria for a major dysfunction of a joint and reconstructive surgery of a major weight bearing joint in 20 C.F.R. pt. 404, subpt. P, app.1, 1.02, 1.03. Norris challenges the ALJ's determination of his RFC by alleging the ALJ

improperly assessed his credibility, the lay witness testimony, and the medical evidence. Norris also contends the ALJ erred in finding he could perform some past relevant work and other work in the national economy. Each assignment of error is discussed below.

### I. Sentence Six Remand

Norris requests a remand pursuant to 42 U.S.C. § 405(g), sentence six, for consideration of Ms. Holland's form by the ALJ. The form was accepted by the Appeals Council, which determined the report did not provide a basis for changing the ALJ decision. In order to prevail on a sentence six remand, Norris must demonstrate that the evidence is new and material, and that he has good cause for his failure to present the evidence earlier. *Id., Mayes v. Massanari,* 262 F.3d 963 (9th Cir. 2001), as amended, 276 F. 3d 453, 463 (9th Cir. 2002).

As the Commissioner has correctly noted, Norris has not presented any evidence to establish why the form could not have been obtained earlier. Norris lives part of the time with his mother, Ms. Holland, and presumably she could have completed the form at any time. Norris contends that he did not submit the form because he did not know how the ALJ was going to assess a previous form submitted by Ms. Holland. The good cause requirement is not met by obtaining more favorable reports after the denial of benefits. There must be a good reason for failure to obtain the evidence earlier. *Mayes v. Massanari,* 276 F.3d at 463, *Clem v. Sullivan,* 894 F.2d 328, 332-333 (9th Cir. 1990). Norris has not provided a good cause for failing to submit the report earlier. The court need not consider the materiality provision as the good cause provision was not met. The court will not remand under sentence six for consideration of the form.

### II. Severity of Impairments

Norris contends the ALJ erred in finding he did not have a severe back impairment. At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. If there is no finding of severe impairment, the Commissioner will find the claimant "not disabled" without continuing the remaining steps of the sequential process. 20 C.F.R.§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); SSR 85-28. Norris bears the burden of proving that his impairments are severe. 20 C.F.R. §§ 404.1512, 416.912; *Mayes v. Massanari*, 276 F.3d at 459. The ALJ found Norris has severe impairments and noted he considered the combined effect of all Norris' impairments, severe and nonsevere, in the remaining steps of the disability analysis. Admin. R. 120. 20 C.F.R. §§ 404.1523, 416.923. The step two inquiry is a screening device to dispose of groundless claims. *Bowen v Yuckert*, 482 U.S. at 153. Once a severe impairment is found the analysis proceeds to step three. The issue is whether the ALJ properly assessed, in his RFC determination, whether there were functional limitations from any impairment or combination of impairments that affected Norris' ability to work after October 3, 2006.

### III.  Listing of Impairments

At step three of the decision-making process, the regulations apply a conclusive presumption that the claimant is disabled if the ALJ determines that the claimant's impairment is equivalent to "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen v. Yuckert*, 482 US at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). The criteria necessary to establish the presumptively disabling impairments are enumerated in the Listing of Impairments. The claimant has the burden of proving that his impairment satisfies or equals each criteria for a listed impairment based on

medical evidence. *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990), *Tackett v. Apfel,* 180 F.3d at 1100, 20 C.F.R. §§ 404.1508, 404.1525, 416.908, 416.925.

Norris contends the ALJ erred by failing to find his knee problem satisfies or equals the criteria for Listing 1.02 (major dysfunction of a joint) and/or Listing 1.03 (reconstructive surgery or surgical arthrodesis of a weight-bearing joint). An assertion of "functional problems is not enough to establish disability at step three." *Tackett v. Apfel,* 180 F.3d at 1100. "Medical equivalence must be based on medical findings." *Id.,* 20 C.F.R. §§ 404.1508, 404.1525, 416.908, 416.925.

## A. Listing 1.02

The criteria for listing 1.02 include:

> *major dysfunction of a joint(s)* (*due to any cause*) characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e.,hip,knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.[2]

---

[2](1) Definition: Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . (2) to ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches, or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices

20 C.F.R. pt. 404, subpt. P, app.1, 1.02. The ALJ correctly noted that no treating or examining physician mentioned findings equivalent in severity to this listing. In addition, the ALJ noted he was considering the impact of Norris' obesity on his functioning. Norris contends that he meets the listing due to problems with ambulation.

Norris had knee surgery on November 14, 2006, for tears in the anterior cruciate ligament, posterior cruciate ligament, and medial collateral ligament in his right knee. Admin. R. 138-139, 147-151, 162-171. He had follow up surgery on November 19, 2006, for hematoma and hemarthrosis. *Id.* at 140-141, 165-166. Norris had another surgery on December 29, 2006, for manipulation of the knee under anesthesia. *Id.* at 155-158. Dr. Hoellrich, the orthopedic surgeon, prescribed a hinged brace on February 15, 2007, and noted Norris was not cleared for heavy physical labor, running, or jumping. *Id.* at 207. On April 17, 2007, Dr. Hoellrich noted Norris continued to use a hinged brace for support. *Id.* at 205-206. Dr. Hoellrich also noted he was pleased with Norris' stability, both anterior and posterior, and with valgus stress. He noted it was still early in the recovery process and recommended an independent strengthening program. *Id.*

Dr. Hoellrich further noted that due to the physical nature of Norris' work as a landscaper, he might not be able to return to that work as he could have a permanent, partial disability. *Id.* Dr. Hoellrich wrote a letter on June 19, 2007, stating that Norris had a problem of progressive and permanent osteoarthritis in his knee and was prescribing a medial unloader brace. *Id.* at 249. He noted the brace was medically indicated and without it Norris would be unlikely to return to

---

does not, in an of itself, constitute effective ambulation. 20 C.F.R. pt. 404, subpt. P, app. 1, 1.00B(2)(b).

9 - OPINION AND ORDER

his previous level of employment or active lifestyle. *Id.* Dr. Hoellrich also noted he anticipated the impairment would be permanent. *Id.* Dr. Hoellrich did not indicate Norris would have ambulation problems consistent with Listing 1.02.

Norris saw Dr. Myers, a family physician, for a disability check on August 27, 2007. *Id.* at 257-262. Dr. Myers noted Norris' only fitness activity was walking and he was trying to put a bike together for exercise, but was doing no home program for treatment rehabilitation or fitness. Dr. Myers also noted intermittent back problems, COPD, and obesity. He provided Norris with handouts on healthy living. *Id.* Dr. Myers saw Norris on September 24, 2007, and again noted he did not have any home treatment or rehabilitation for his knee and was trying to get a bicycle repaired to use. *Id.* at 254-256. He noted Norris could ambulate easily with his brace and his pain was not severe at the exam. *Id.* at 254. Dr. Myers further noted that Norris had no special treatment for his back and his biggest issues were obesity and smoking. *Id.* at 255-256.

On December 6, 2007, Dr. Myers noted Norris continued to smoke heavily, was not physically active, and was uninterested in lifestyle changes. *Id.* at 251. Dr. Myers completed a Multiple Impairment Questionnaire on May 29, 2008. *Id.* at 270-277. He noted Norris would have back and knee pain precipitated by bending, twisting, walking, inactivity, and other factors including poor self esteem, poor motivation, and tobacco addiction. *Id.* at 271-272. Dr. Myers noted restrictions on Norris' standing, walking and sitting on this form. However, Dr. Myers did not indicate that Norris would have ambulation problems consistent with Listing 1.02.

Norris relies on his testimony and the lay testimony of his mother and sister regarding his limitations. However, a claimant's symptoms alone are insufficient to establish a medical impairment. 20 C.F.R. §§ 404.1529, 416.929; SSR 86-8. Norris has not provided medical

evidence that his impairments meet the criteria for Listing 1.02. As noted below, the ALJ properly evaluated the testimony of Norris, Norris' sister, and Norris' mother. The ALJ, therefore, properly found that Norris' impairments did not meet Listing 1.02.

### B. Listing 1.03

The criteria for Listing 1.03 provides:

> *Reconstructive surgery or surgical arthrodesis of a major weight bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within twelve months of onset.

20 C.F.R. pt. 404, subpt. P, app. 1, 1.03. The definition of the inability to ambulate effectively is the same definition used in Listing 1.02. Just as Norris failed to provide evidence that he is unable to ambulate effectively for Listing 1.02, he has failed to meet the same definition for Listing 1.03. The ALJ did not err in finding Norris' impairments did not meet Listing 1.03.

## IV. RFC

Norris alleges the ALJ erred in determining his RFC. He contends the ALJ failed to properly evaluate the medical evidence relating to his impairments. Norris further contends the ALJ erred in evaluating his credibility regarding the limitations imposed by his impairments. In addition, Norris challenges the ALJ's evaluation of the lay witness testimony.

### A. Medical Evidence

The ALJ correctly noted that Norris did not list back pain on the Pain Questionnaire completed for his disability application. Admin. R. 20. He further noted that Norris had never had any specific examination for back symptoms or any treatment for back pain. *Id.* The ALJ also noted that Norris was able to perform heavy labor as a landscaper following his early back

injury. *Id.* at 19. Norris cites a Multiple Impairment Questionnaire completed by Dr. Myers on May 29, 2008, to demonstrate the severity of his back pain. *Id.* at 270-277. The ALJ discussed the questionnaire noting that Dr. Myers cited transient back problems. *Id.* at 23. He also discussed Dr. Myers' medical records noting that although Dr. Myers found some back inflexibility, he found no significant abnormalities. *Id.* The ALJ also noted that Dr. Myers' diagnoses were obesity, COPD, status post knee surgery with mild incapacitation, and that Norris' smoking and obesity were the "biggest issues." *Id.* at 22. Dr. Myers medical notes only mention intermittent back problems. *Id.* at 23, 251, 254-255, 261-262.

Dr. Myers noted on the questionnaire that Norris was limited to three hours of standing and walking in an eight hour day, with no limitations on sitting, and switching off sitting, standing and walking. He also noted Norris would need to move around every one to two hours. *Id.* at 23, 272. The ALJ found Dr. Myers' limitations regarding standing and walking inconsistent with the medical record. The ALJ further noted that Dr. Myers' treatment of Norris was sporadic and the opinion was inconsistent with that of Dr. Hoellrich, the orthopedic surgeon. *Id.* at 23. Dr. Hoellrich opined that Norris would not be able to return to heavy labor, but did not limit his ability to sustain other competitive employment. *Id.* at 23, 249. The ALJ found a sit and stand option in the RFC more consistent with the record, including the reports of the medical consultants for the state agency. The ALJ also rejected Dr. Myers' opinion that Norris could lift fifty pounds occasionally, finding instead that Norris' obesity, deconditioning, and right knee problems should limit him to light work only. *Id.* at 23.

The ALJ can reject a controverted medical opinion, such as that of Dr. Myers, by providing specific, legitimate reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427

12 - OPINION AND ORDER

F. 3d 1211, 1216 (9th Cir. 2005). As noted above, the ALJ provided those reasons. The court must uphold the ALJ's findings, even if evidence exists to support more than one rational interpretation of the evidence. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d at 1039-1040.

## B. Norris' Testimony

The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Norris has a medically determinable impairment which could produce his symptoms. When there is an underlying impairment and no evidence of malingering, An ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen v. Chater*, 80 F.3d at 1284-1285. The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the

claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id.* *See also* SSR 96-7p.

The ALJ found that Norris provided inconsistent statements regarding his alcohol use, including statements made to the ER staff in 2006, to Dr. Hoellrich in 2006, and to the hospital staff in 2008. Admin. R. 21, 23-24,153, 284, 282, 284. He also noted Norris made inconsistent statements regarding the cause of his knee injury. *Id.* at 21, 153, 184. An ALJ can properly discredit testimony when the claimant has made inconsistent statements. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Dr. Myers noted that Norris had motivation problems regarding compliance with lifestyle changes such as cessation of smoking, increasing physical activity, and diet. Admin. R. 251-254, 256, 272. The ALJ also noted Norris' noncompliance with these recommendations, particularly the recommendation to quit smoking, despite his COPD. *Id.* at 23-24. Although Norris testified at the hearing that he had cut back on his smoking, he does not state that he quit smoking or increased his exercise. *Id.* at 337. Noncompliance with treatment recommendations is a relevant factor in assessing credibility. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)(en banc).

The ALJ further noted that Norris did not try to return to the workforce or seek vocational rehabilitation following his on-the-job knee injury. Admin. R. 24. He found that although Dr. Hoellrich restricted Norris from heavy labor, running or jumping, and prescribed a medial unloader ligament brace, there was no limitation on other competitive employment. *Id.* at 22. A claimant's work history may be considered as a factor in evaluating credibility. *Thomas v. Barnhart*, 278 F.3d at 959.

The ALJ considered the medical record, Norris' prior inconsistent statements, his treatment compliance, and his work history and concluded the allegations of Norris regarding the limiting effects of his symptoms were not supported. He considered appropriate factors and drew reasonable inferences from substantial evidence in the record in assessing Norris' credibility. The ALJ's interpretation is not irrational and is therefore upheld. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d at 1039-1040.

## C. Lay testimony

An ALJ cannot disregard the testimony of a lay witness without comment, but must give reasons that are germane to the witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir 1996). The ALJ discussed a report by Naomi Holland, Norris' mother, completed in December, 2006. Admin. R. 24. The ALJ noted the report had little probative value as it was completed only two months after Norris' injury and initial surgery. *Id.* In addition, Norris underwent further surgery after the report with noted improvement. *Id.*

The ALJ also discussed the hearing testimony of Lola Holland, Norris' step-sister. *Id.* at 24, 355-360. The ALJ noted that Ms. Holland reported Norris had difficulties walking very far, and walked with a limp. *Id.* at 24, 356. He also noted she testified that while replacing floor tiles for her Norris needed to move around and change positions every ten to fifteen minutes, but could work somewhat longer in a seated position. *Id.* at 24, 357-358. The ALJ found this testimony consistent with his RFC which includes a sit and stand option. He also noted that the RFC does not allow for crouching and kneeling as would be typical of jobs such as laying tile. *Id.* at 24.

Norris alleges the ALJ had a duty to develop the record and should have requested a follow up report from Ms. Naomi Holland, Norris' mother. However, the duty to develop the

record is triggered only when the record is inadequate to properly evaluate the evidence or the evidence is ambiguous. *Mayes v. Massanari*, 276 F.3d at 459-460 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). It is the ALJ's duty to resolve ambiguities in the record. *Edlund v. Massanari*, 253 F.3d at 1156. The ALJ was able to properly evaluate the evidence and resolve any ambiguities in the record.

The ALJ properly assessed Norris' RFC. He evaluated the medical evidence and reached conclusions based on substantial evidence in the record. The ALJ assessed Norris' credibility and drew reasonable inferences regarding Norris' credibility. The ALJ also properly evaluated the lay witness testimony. The ALJ's determination of Norris' RFC is supported by substantial evidence in the record.

### V.. Vocational Evidence

Norris contends the ALJ erred at steps four and five of the decision-making process by relying on faulty vocational evidence. The ALJ found Norris had the following RFC: light work with no kneeling and crouching; "no more than occasional and if possible avoid crawling; avoid uneven terrain; sit and stand option; and avoid exposure to concentration of respiratory irritants." Admin. R. 21. He found Norris could perform his past relevant work as a cashier and, although not required to do so, made a step five finding that there were other jobs in the national economy that Norris could perform. At step five, the Commissioner must show that significant numbers of jobs exist which the claimant can perform. *Andrews v. Shalala*, 53 F.3d at 1043. An ALJ can satisfy this burden by eliciting the testimony of a vocational expert ("VE") with a hypothetical question that sets forth all the limitations of the claimant supported by the record. *Id.; Osenbrock v. Apfel*, 240 F.3d 1157, 1162 - 1163 (9th Cir. 2001).

Norris contends the ALJ's conclusion is erroneous because he elicited testimony from the VE with hypothetical questions that did not contain the limitations articulated by Dr. Myers regarding frequent breaks and the ability to rest. As described above, the ALJ did not find these limitations credible. An ALJ is not required to incorporate limitations based on evidence that he properly discounted. *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d at 1197; *Osenbrock v. Apfel,* 240 F.3d at 1163-1165.

Norris also contends the RFC does not address whether going from a sit and stand option would require other restricted activities such as kneeling, bending, or stooping on a sustained basis. Norris does not provide any evidence that going from a sit and stand option would require these activities or explain why those activities would be on a sustained basis. The ALJ considered all the evidence and framed his vocational hypothetical question based on the limitations supported by the record as a whole. The VE testified that Norris could perform his past relevant work as a cashier and that a significant number of jobs exist in the national economy that Norris can perform. Admin. R. 365-368. The ALJ's conclusion that Norris is able to perform some work and is not disabled is supported by substantial evidence and free of legal error.

## CONCLUSION

Based on the foregoing, the ALJ's decision that Norris does not suffer from a disability within the meaning of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

DATED this 3rd day of February, 2010.

/s/ Paul Papak

Paul Papak

United States Magistrate Judge

18 - OPINION AND ORDER